522 So.2d 959 (1988)
Gregory A. PEADEN, Appellant,
v.
Julie C. (Peaden) SLATCOFF, Appellee.
No. 87-1366.
District Court of Appeal of Florida, First District.
March 18, 1988.
Rehearing Denied April 21, 1988.
Carroll L. McCauley, Panama City, for appellant.
*960 William G. Warner, Panama City, for appellee.
WENTWORTH, Judge.
Appellant Peaden contends the child custody order entered in this case does not rest on proof of changed circumstances requiring the modification. The order on appeal resolved a school selection issue and placed primary residence of the parties' five year old son Eric with the appellee mother, substituting alternate weekend and holiday visits with appellant in lieu of the equal time he has had with his son for four years under the original stipulated provisions for "shared equal custody."[1] We find the trial court had ample authority to grant to the appellee mother responsibility for school choice, but reverse the modification with respect to primary physical residence for lack of findings or evidence of changed circumstances affecting the child's best interests, not reasonably contemplated by the original orders.
The modifications with respect to both primary residence and school choice are, so far as the order reflects, based on the single factual finding that the parties "have been unable to reach an agreement concerning the issue" of which school the child will attend. The record substantiates that disagreement, and the statutory framework for such decisions provides specifically that the areas of responsibility for which the court may divide and designate responsibility between parents "may include ... education." Section 61.13(2)(b)2 a, Florida Statutes. But the order did not find, and the record does not reflect, that the school choice requires the modification of residence provisions. Whatever speculation might ordinarily be made in favor of a connection, the record negates such speculation by establishing that the mother's school choice, expressed both in testimony and her petition, is the same private school which the child attended without interruption or significant impediment for three of the years during which his residence had alternated weekly between parents.
Reluctant as we are to decide the appeal on the basis of an evidentiary predicate not referenced in the order, there appears to be no alternative under terms of the cited statute and principles controlling modification of custody orders, infra, which bind us as well as the trial court. Because we find merit in appellant's basic contention that the evidence showed no material change of circumstances requiring modification, we do not reach the secondary argument as to the choice between parents for purpose of primary physical residence to which much of the expert testimony related.
In substantiation of her allegation of changed circumstances supporting modification, appellee relies in part upon brief testimony of the child's preschool teacher referring generally to his aggressiveness and time in a "time-out chair, because of unattentiveness and being a disruption to the class at times," and specifically to a single biting incident during play with another child. This witness said "we kept open communication" with both parents, and over her two years' contact she saw some maturity and behavior improvement "because of his age." The school director testified as to Eric's behavior, "I wouldn't say it's abnormal." A psychologist, Dr. Warriner, who saw the child several times at his mother's request over a six month period, concluded, "I think he has some mild behavior problems, but those are not dramatic, unusual, or strange in this circumstance ... in my opinion they don't represent indication of severe behavioral *961 problems." As to the custody arrangement covering the child's life from age ten months to kindergarten he said, "I think that it's worked reasonably well up to this point, surprisingly so."
Dr. Warriner expressed his opinion on the need for a change in the custody order as based simply on the fact that Eric had reached kindergarten age:
I think the time is at hand and will be continuing to improve in importance for someone, ... to make a determination where primary custody will lie. It's my opinion that he will be more consistently and probably better served, the boy will be, in the long haul if he has liberal visitation with one house and has primary custody of the other... . [I]t will give him the type of consistency that I think he's going to need in a home environment as he begins to tackle school work and more formal educational requirements... . There's going to be some requirement for discipline in the sense of learning, you know, learning different skills, and I think that is better served with one primary residence than with alternating because it's just too big a task for two couples to have exactly similar or extremely similar requirements in terms of homework, in terms of discipline procedures, in terms of behavioral strategies, et cetera... . I do not expect the present arrangement if it were continued to result in extreme psychological problems. I think he can make it. He's resilient and he has a relatively  not easily disciplined, but he will listen and will adhere to firm discipline, and he gets that apparently on both sides. So what I'm saying is, I don't think it will do him unending damage to continue the same thing. I simply believe it will be preferable to do it the other way... .
Appellant relies upon decisions by Florida courts in other cases holding that growth and school changes did not constitute substantial change warranting modification of custody. Collins v. Newton,[2] 362 So.2d 174 (Fla. 2d DCA 1978); Teta v. Teta, 297 So.2d 642 (Fla. 1st DCA 1974); and Bruggisser v. Bruggisser, 244 So.2d 518 (Fla. 3d DCA 1970), citing numerous Supreme Court decisions. Such factual situations are, of course, infinitely variable and subject initially to wide discretion of the trial court in determining the best interest of a particular child. But the cases clearly establish that discretion is diminished with respect to modification, and we find no distinction between changes of custody between parents and the change by new designation of primary physical residence in this case. The statute itself requires that the issue of "primary physical residence ... shall be determined by the court's consideration and evaluation of all factors ... including ... the desirability of maintaining continuity." (e.s.) Section 61.13(3)(d), Florida Statutes. None of the other factors delineated in the statute appear to have significant negative or positive relevance to the evidence in this case, and parental fitness was not disputed. While continuity in many circumstances may support designation of a single primary residence,[3] we find no substantial basis in the *962 record before us for altering the four years' continuity of reasonably successful equal shared physical custody between the parents, a period which in this case constituted the entire life of the child since infancy.
The order is reversed insofar as it substitutes new residence and visitation provisions for those previously determined, and the cause is remanded for the entry of a new order consistent herewith on the existing record or such new evidence as the court may deem necessary.
MILLS and BARFIELD, JJ., concur.
NOTES
[1] The present order modified a 1983 dissolution judgment incorporating a stipulated provision for "shared equal custody" of the parties' adopted son Eric, then 10 months old. A 1984 amendment or clarification order had defined this general provision by again adopting a stipulation for his residence "with each parent for one week" alternating each Sunday, subject to written consent to variation. The 1987 modification order continues to provide the "parties shall share parental responsibility" and "confer ... so that major decisions ... may be determined jointly, where reasonably possible." It makes two changes: (1) "the primary physical residence of [Eric] shall be with the former wife," with alternate weekend and holiday visits with appellant; and (2) the mother as the newly designated primary residential parent "is hereby granted the authority to determine which school the child will attend."
[2] The court noted from earlier opinions the rule that "the mere finding that the best interest ... of the children would be served ... was insufficient to warrant modification when there was no showing of a detriment to the children if custody were not changed." (emphasis supplied)
[3] Even appellant's expert witness in this case conceded the probable future resolution of this issue:

Q. And do you have an opinion one way or another as to whether it would be in his best interests to have a primary residence rather than the custody or visitation schedule that was explained to you?
A. From a psychological point of view or purely practical point of view as this boy gets older he's going to wind up having a primary residence no matter what the Court does, because of the practicality of going to school and so forth, gets to the parents. So I think from that aspect that that would be true. I think that in general a child needs to have a very strong stable identification of himself and home which that represents. I don't know if one or two ways to work that out, but all of those are important.
Q. What effect do you feel that Eric becoming of school age would have on that situation? Do you think it would make it more pronounced?
A. Well, if he has a comfortable and working balance prior to school, then the issue is a practical issue. That could be clumsy or it could be very easy, depending on location of the parents and so forth. But I don't think there's an inherent or built-in absolute as to answer that from a psychological point of view to fit all occasions.